Filed 10/2/24  P. v. Rubio CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROBERT RUBIO,<br><br>        Defendant and Appellant. | A168294<br><br>(Alameda County<br>Super. Ct. No. 148264D) |

Defendant Robert Rubio appeals the order summarily denying his petition for resentencing pursuant to Penal Code section 1172.6.[1]  We find no error and affirm.

## BACKGROUND

On May 29, 2007, Robert Rubio was convicted of first degree murder. (§ 187, subd. (a).)  The jury found that he did not personally discharge a firearm (§ 12022.53, subds. (c), (d)), but that he personally used a firearm in

---

[1] Undesignated statutory references are to the Penal Code.  Originally numbered section 1170.95 when enacted in 2018 as Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4) (Senate Bill 1437), the statute was renumbered to section 1172.6 effective June 30, 2022 (Stats. 2022, ch. 58, § 10).  Because this statutory change does not affect our consideration of the issues raised in this appeal, we refer to the statute as section 1172.6 throughout the rest of this opinion even though it was referenced in the proceedings below by its former enumeration.

1

the commission of the crime (§§ 12022.5, former subd. (a)(1), 12022.53, subd. (b)), and that he was guilty of possession of a firearm by a felon (former § 12021, subd. (a)(1), repealed and reenacted by Stats. 2010, ch. 711, §§ 4 & 6, eff. Jan. 1, 2012).  Rubio was sentenced to a total term of 35 years, 8 months to life in prison.  In 2011, this court affirmed his convictions on direct appeal.

On January 19, 2022, Rubio filed a petition for resentencing.[2]  The People filed a response to the petition and the court appointed counsel for Rubio, who filed a brief on his behalf.

The court summarily denied the petition, finding that Rubio could not make a prima facie showing that he was entitled to resentencing because he was convicted of aiding and abetting, with express malice, a first degree murder.

Because the trial court dismissed Rubio's section 1172.6 petition at the prima facie stage, an extended summary of the evidence from his trial is not relevant to the issues raised in this appeal.  (*Beaudreaux*, *supra*, 100 Cal.App.5th 1227, 1238 [consideration of "the factual summar[y]" in an appellate opinion is prohibited at the prima facie stage].)  For purposes of providing context, it is sufficient to note that the evidence at his trial established that Rubio and his three codefendants got out of a car and two of the codefendants shot and killed the victim.

---

[2] As the parties note, this was Rubio's second petition for resentencing. In *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1242, fn. 5 (*Beaudreaux*), this court held that while successive petitions for resentencing are not explicitly barred by section 1172.6, a successive petition may be barred by the doctrine of collateral estoppel.  No argument regarding claim preclusion, however, has been raised by the parties.

**DISCUSSION**

## I.     Section 1172.6

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 [(Stats. 2018, ch. 1015, §§ 2-4)], 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)  "Senate Bill No. 1437 . . . substantially modified the law relating to vicarious liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder [citation] and by narrowing the scope of felony murder." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 11 (*Lopez*).)

"Senate Bill 1437 also created a procedure for defendants already convicted of murder under the former law to obtain retroactive resentencing in the trial court.  That procedure permits these defendants to petition for resentencing if they could not currently be convicted under the newly amended sections 188 and 189.  It calls for a series of adjudication steps, starting with a determination of prima facie sufficiency under section 1172.6, subdivision (c); followed, where necessary, by an evidentiary hearing under section 1172.6 subdivision (d); and finally, where the petitioner prevails at the evidentiary hearing, by redesignation of the conviction at issue under section 1172.6, subdivision (e)." (*Beaudreaux, supra,* 100 Cal.App.5th 1227, 1236.)

As relevant here, a petitioner is ineligible for resentencing as a matter of law, and thus the petition may be summarily denied at the prima facie step, "if the record of conviction conclusively establishes, with no factfinding,

weighing of evidence, or credibility determinations, that . . . the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, . . . the actual killer in the commission of murder in the first degree, [or] . . . the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*Lopez, supra*, 78 Cal.App.5th at p. 14.) Our Supreme Court has described the prima facie inquiry under section 1172.6 as "limited" and explained that the threshold for establishing a prima facie case for resentencing is " 'very low.' " (*Lewis, supra*, 11 Cal.5th at pp. 971, 972.)

On appeal, "our standard of review is de novo. We independently review the denial of a resentencing petition at the prima facie stage." (*Beaudreaux, supra*, 100 Cal.App.5th 1227, 1238.)

## II.    Jury Instructions

Initially, the jury was instructed that those who "directly and actively [commit] the act constituting the crime" and those who "aid and abet the [commission] of the crime" are "equally guilty." As given at trial, CALJIC No. 3.01 told the jury: "A person aids and abets the [commission] of a crime when he [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime."

The jury was instructed pursuant to CALJIC No. 8.10 that Rubio and his codefendants were charged with murder, which required proof that a human being was killed with malice aforethought. Pursuant to CALJIC No. 8.11, the jury was instructed on the definition of malice: " 'Malice' may be either express or implied. [¶] [Malice is express when there is manifested an intention to kill human being.] [¶] [Malice is implied when: [¶] 1. The killing resulted from an intentional act; [¶] 2. The natural consequences of

4

the act are dangerous to human life; and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.]"

The jury was instructed that murder is classified into two degrees and that if it found Rubio guilty of murder, it must then determine whether it finds the murder to be of the first or second degree. CALJIC. No. 8.20, as given in this case, provides that "[a]ll murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree. [¶] . . .[¶] If you find that the killing was preceded and accompanied by clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree. [¶] . . .[¶] To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill."

## III.   Analysis

Rubio contends the trial court erred in summarily denying his petition by finding that the jury necessarily found that he, with an intent to kill, aided and abetted the actual killer in the commission of a murder. He concedes that no natural and probable consequences doctrine instruction was given, but argues that the aiding and abetting instruction (CALJIC No. 3.01) and the murder instructions (CALJIC Nos. 8.10 and 8.11) permitted the jury to impute implied malice to him as an accomplice and that neither the instruction on premeditation and deliberation (CALJIC No. 8.20) nor the finding that he committed a first degree murder rebuts that possibility as a

5

matter of law.  Rubio asserts that because the record fails conclusively to establish that the jury found that he acted with malice, he satisfied his burden of making a prima facie showing and is entitled to an evidentiary hearing.  We disagree, concluding that even if, as Rubio argues, the jury may have convicted him of first degree murder without finding that he engaged in the requisite premeditation and deliberation, it did not convict him without finding that he acted with malice.

Rubio argues that CALJIC No. 8.20 did not necessarily require the jury to find that he had an intent to kill.  Although not cited by the parties, Rubio's argument is supported by *In re Loza* (2018) 27 Cal.App.5th 797, which found that the word "defendant" in the phrase "clear, deliberate intent on the part of the defendant to kill" could refer to *any* of the defendants with whom an accomplice was tried—at least where, as here, the jury is instructed by CALJIC No. 1.11 that "[t]he word 'defendant' applies to each defendant unless you are instructed otherwise." (*In re Loza*, at pp. 804–805.)  The court also pointed out that CALJIC No. 8.20 further states that "[t]o constitute deliberate and premeditated killing, the *slayer* must weigh and consider the question of killing," which likewise could be interpreted to mean the jury need find only that the actual killer premeditated and deliberated in order to convict an accomplice of first degree murder.  (*Id.* at p. 805.)[3]

---

[3] The court granted relief because of the possibility that the accomplice was convicted of first degree murder without a finding that he premeditated and deliberated.  (*In re Loza, supra*, 27 Cal.App.5th at pp. 805, 808.) Although Rubio makes the same argument, *In re Loza* involved a petition for habeas corpus, not a petition for resentencing.  (See *id.* at p. 799.)  Rubio does not argue that resentencing relief is available to reduce the degree of murder, and courts have rejected that proposition.  (See *People v. Gonzalez* (2023) 87 Cal.App.5th 869, 880–881; *People v. Didyavong* (2023) 90 Cal.App.5th 85.) We need not examine the issue given the lack of any argument about it in the briefing.

Based on *In re Loza*, we will assume for the purposes of our analysis that the jury could have interpreted CALJIC No. 8.20 in the manner that Rubio suggests, and thus that the instruction by itself did not require a finding that he personally harbored malice. Nonetheless, by convicting Rubio of first degree murder, on this interpretation the jury necessarily concluded that the actual shooters—the slayers—acted with express malice (as well as with premeditation and deliberation). (*People v. Clements* (2022) 75 Cal.App.5th 276, 299, citing *People v. Blakeley* (2000) 23 Cal.4th 82, 87 ["Malice may be either express, i.e. when a defendant manifests an intention to kill, *or* implied"], italics added.) As we discuss next, that conclusion forecloses Rubio's argument that he may have been convicted without a finding that he acted with malice.

Again, with respect to the mental state of an accomplice, CALJIC No. 3.01 instructs that the person must have "knowledge of the unlawful purpose of the perpetrator" and "the intent or purpose of committing or encouraging or facilitating the commission of the crime." Rubio argues that this instruction does not distinguish between first and second degree murder, and notes that the defendants were charged with murder generally, not first degree murder. Thus, he argues, under CALJIC No. 8.11, the "unlawful purpose of the perpetrator" need not be an intent to kill (because malice can be implied), and "the crime" could be second degree implied malice murder. It is true that, in such circumstances, courts have found that these instructions may impermissibly allow for the imputation of malice. (See, e.g., *People v. Langi* (2022) 73 Cal.App.5th 972; *People v. Maldonado* (2023) 87 Cal.App.5th 1257.) But the ambiguity at issue in these cases arises only when the perpetrator has a purpose that is less than " 'murderous intent.' " (*Langi,* at pp. 982–983; see *People v. Coley* (2022) 77 Cal.App.5th 539, 547

[noting that *Langi* is limited to homicides founded on a theory of implied malice].)  That possibility does not exist here, because as discussed above, in convicting Rubio of first degree murder the jury necessarily found that the perpetrators intended to kill.

Given the jury's conclusion that the perpetrators intended to kill, the jury found under CALJIC No. 3.01 that Rubio had knowledge of their intent to kill and that he had the intent or purpose of assisting them in the killing. In other words, the jury found that Rubio acted with malice.  (See *People v. McCoy* (2001) 25 Cal.4th 1111, 1123 ["Absent some circumstance negating malice one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice"].)  Because the jury found that Rubio personally had the requisite mental state for murder, under these circumstances he is ineligible for resentencing as a matter of law.  (*Lopez*, *supra*, 78 Cal.App.5th at p. 14.)[4]

## DISPOSITION

The order denying Rubio's petition for resentencing is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

---

[4] Citing *People v. Burns* (2023) 95 Cal.App.5th 862, *People v. Flores* (2023) 96 Cal.App.5th 1164, and *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, the Attorney General alternatively argues that we should affirm on the ground that Rubio's argument does not rest on changes enacted by Senate Bill No. 1437, and further argues that we should repudiate *People v. Langi*, which was decided by a panel of this Division, as having applied an incorrect standard.  We do not reach these arguments in light of our conclusion that Rubio has not established error even under the authorities on which he relies.